JAMES STIMPSON, PLAINTIFF IN ERROR, v. THE BALTIMORE AND SUS-
QUEHANNA RAILROAD COMPANY.

Stimpson's patent "for an improvement for the purpose of carrying railroads
through the streets of towns, or in other situations where it may be desirable that
·the wheels. of ordinary carriages should not be' subjected to injury or obstruction,"
decided to be a combination or application of means already known and in use,
and not to be original as to the invention or discovery of those means.

That the mode given by him for the application of those means, and the objects
proposed thereby, differ materially from the apparatus used by the Baltimore and
Susquehanna Railroad Company for turning the corners of streets. The latter,
therefore, no infringement of Stimpson's patent.

The practice of bringing cases up to this court upon an agreed state of facts has been
sanctioned, and is now pronounced to be correct.

ERROR to the Circuit Court of the United States for the Dis-
trict of Maryland.

The plaintiff in error brought an action in the court below,
for an alleged infringement of his patent right by the defendant
in error.

The cause was not tried by a jury, but was submitted to the
court upon the statement of facts hereinafter inserted. Judg-
ment for the defendant, upon which the plaintiff sued out this
writ of error.

### Statement of Facts.

It is agreed that the privilege of the invention set forth or re-
ferred to in the declaration was intended to be secured to the
plaintiff by letters patent, dated the 23d August, 1831; that
said patent, for defectiveness of specification, was surrendered,
and another instead thereof issued on 26th September, 1835;
and that this last was, for like reason, surrendered, and another
issued in place of it, bearing date the 27th day of August, A. D.
1840; and that said patent right was duly extended for the
term of seven years from the 23d day of August, A. D. 1845,
the period of the expiration of the term of said original letters
patent. The invention is described in the specification in the
words following, to wit: —

### Specification.

"The schedule referred to in these letters patent, and making
part of the same.

"To all whom it may concern:

Be it known, that I, James Stimpson, of the city of Balti-
more, in the State of Maryland, have invented a new and use-
ful improvement in the mode of forming and using cast or
wrought iron plates or rails for railroad carriage-wheels to run
upon; more especially for those to be used on the streets ·of
28 *

cities, on wharves, and elsewhere; and I do hereby declare, that the following is a full and exact description of my said inventions or improvements.

" For the purpose of carrying railroads through the streets of towns or cities, and in other situations where circumstances may render it desirable that the wheels of ordinary carriages should not be subjected to injury or obstruction, I so construct or form the rails, that the flanches of the wheels of railroad cars or carriages may be received and run within narrow grooves or channels, formed in or by said rails, said grooves not being sufficiently wide to admit the rims of the wheels of gigs or other ordinary carriages having wheels of the narrowest kind. These plates or rails may be varied in form, according to circumstances.

" In the accompanying drawing, figure 1 represents a railroad track, supposed to be formed in a street, a part of it being shown as straight and a part as curved. The other figures give sectional views of various forms in which I make my railway bars or plates, which are usually of cast-iron, and are laid down and secured upon rails of wood. Figure 2 is a section of the form of cast-iron rail plate which I most commonly use where the track is slightly curved; and figure 3, a plate nearly the same with figure 2, which I use where the track is nearly or quite straight. In these plates I make a groove or channel, as at $a$, which is to receive the flanch of the wheel. This channel should be about an inch and a half wide at the top, and about an inch and a quarter at bottom; it is sufficiently deep to admit the flanch of the wheel to run in it without touching its bottom. The lower corners of the interior of this channel I make rounding or curved, in order that any dirt or other foreign matter collected therein may be the more readily forced out by the action of the flanches. The cheek or jam, which is on the inside of the channel, should be about three fourths of an inch wider at top, and as high, or nearly so, as the face $c$ of the plate upon which the tread of the wheel is to run. These plates I cast hollow at $d$, to save weight. They should be about two inches and a quarter deep, six inches and a half wide at the bottom, and about six inches and a quarter at the top; the taper at their sides, when thus formed, aiding in confining them in place by the wedging of the stones and earth of the pavement against them; they may be cast three or four feet in length; their ends should be bevelled, say at an angle of forty-five degrees; or they may be formed with a tenon and mortise. They have spike-holes through them, in order to fasten them down to the rails of wood or of stone upon which they are placed.

" Figure 3 is the same with figure 2, excepting that it has a slight chamfer or rounding off of the angle of the face, as shown at *e*, to admit the cone or curve on the tread of the wheel where it joins the flanch to run free, so that the general tread of the wheel may bear on the face *c* of the plate, which face I prefer to make a little crowning.

" Where the road is perfectly straight, as at A, on the track, this chamfered edge plate is to be preferred; but where it is slightly curved, as at B, on the track, I use on the outside of the curve the rails shown in figure 2, which are not chamfered, as the conical or larger part of the tread of the wheel close to the flanch will then bear upon the edge *e*, and this being larger than the tread, will cause the wheels to roll round such curved parts of the road with little or no slipping.

" Where it is necessary to turn a curve of shorter radius than that which could be readily effected by the aid of the conical part of the wheel, as at C, on the track, I then resort to the plan, secured to me by letters patent, for ' turning short curves on railroads,' which letters patent bear the same date, having been granted on the same day with the letters patent of which this instrument makes a part, for railroad plates to be used on the streets of cities, &c.; that is to say, I apply ' the flanches of the wheels on one side of the railroad carriages, and the tread of the wheels on the other side, to turn curves on railways.' In this case, a railroad plate may be made, like that shown in figure 4, to form the channel for the wheel on the larger or outer curve. In this case, the groove or channel is not to be equal in depth to the rise or projection of the flanch, so that the flanch alone bears on the rail on this outer side, and takes the whole weight of the load, thus freeing the tread of the wheel on that side from the face of the plate, for the distance necessary to turn the curve; for a full exemplification of which plan, I refer to said letters patent for ' turning short curves.' Such curves, however, will rarely if ever occur, excepting in the turning of the corners of streets; and to this particular mode I make no claim in the present patent. When the wheels arrive at the straight part of a track, after having run upon a curved part, the rails shown in figure 3 are used, or others of a like nature.

" It is to be understood that the object had in view in varying the form of the rails by chamfering, as in figure 3, or by omitting the chamfer, as in figure 2, is to attain the same end, namely, the running with little friction or dragging around curves in the streets, which is attained, on the ordinary railroad tracks out of cities, by allowing the cars to vibrate from side to side, so that the varying diameter on the conical parts of the

treads of the wheels may cause them to adapt themselves to curvatures on the road.   The narrow channel used by me, and so essential in cities, does not admit of this lateral vibration, but, by the devices above described, a similar result is attained.

"In most cases for passing along streets, and more especially when the iron rails are imbedded in rails or sills of stone, I prefer so to construct the said iron rails as that the wheels shall run altogether on the flanches.   In this case, I use iron plates, such as are represented in figure 4.   These plates may be made two inches and three quarters wide at top, and three inches at the bottom ; the channel or groove may be about five eighths of an inch in depth, and an inch and a quarter wide at the top, and an inch at the bottom ; the corners, at the bottom of the groove, being curved as in figures 2 and 3.   The thickness below the bottom of the groove or channel may be three fourths of an inch ; the plates would then be one inch and three eighths in depth.   These shallow-channelled plates present several advantages, among which are, that they will offer less resistance than others to the motion of the cars ; they are much lighter than others ; they will not require any cleaning out, the flanches effecting this perfectly, which may not always be the case in deeper channels.   These shallow channels may be made narrower than the deeper ones, the flanches being much thinner at their outer edges than they are near to the treads of the wheels.   The wheels will, undoubtedly, be as safely guided in the shallow as in the deeper channels, and the rails will be equally durable with those of greater weight. When rails of this description are sunk into a channel in a rail of stone or wood, the base being wider than their upper sides, the pressure of sand into the seams on each side of the iron, caused by the running of common carriage wheels over them, will effectually confine the iron plates between the jambs of the stone or wood.   Figure 6 shows a rail plate resembling figure 4, but having a channel the whole depth of the flanch.

"Should it be preferred to use the ordinary flat wrought-iron rails, they may be laid double, at such a distance apart as to form the proper channel for the flanch between them ; $f f$, figure 5, are sections of two such iron plates, and are shown as used at D on the track.   Wrought plates may also be formed in the manner represented in figure 7.   This plate is rolled so as to have a channel, $a$, in it, which may be one inch and a quarter wide at top, one inch at bottom, and five eighths of an inch deep.   The plate, $g g$, on each side of the channel, may be two inches wide ; the whole plate may be of uniform thickness, and furnished with spike-holes alternately on each side of the channels ; these are supposed to be used at E on the track.   Where

it is necessary to cross a water-gutter in the street, I use a cast-iron plate or plates to cross said gutter, the flanch channels being in such plate or plates. The whole surface between the channels is cast rough, to prevent the slipping of the feet of horses. The aforesaid cast-iron plate is best cast in one piece, as it will be stronger than if divided; although of the same thickness, it must, of course, be of a width sufficient for the particular gutter to which it is to be applied, and it should be strengthened by having ribs cast on its lower side; these should be about an inch and a quarter deep, exclusive of the thickness of the plate. In some cases I cover the gutters the whole width of the street with such cast iron plates, and extend them to some distance beyond the curbings. I thus make a great improvement in streets for the ordinary purposes of travel. Such a plate is shown in figure 8, *a a* being the grooved channels cast therein, and *h h* the upper face of the plate, cast rough or checkered.

"Having thus fully described the nature of my improvements, and pointed out various modes in which the same may be carried into effect, what I claim as constituting my invention, and desire to secure by letters patent, is the employment of plates or rails, either of cast or of wrought iron, constructed and operating upon the principle or in the manner herein described; having narrow grooves on each side of the track for the flanches of car-wheels to run in, by which they are adapted to the unobstructed passing over them of the various kinds of common carriages, and to the running of the wheels on slight curves without dragging. I also claim, in combination with such grooved rails or tracks, the employment of plates of cast-iron for the covering and crossing of gutters, such plates being constructed as described, and having the necessary flanch channels cast in them. And I do hereby declare, that I do not intend to confine myself to the precise forms and dimensions herein given, these being designed merely to exemplify, in a clear manner, the nature, object, and mode of carrying into effect of my said invention.

JAMES STIMPSON.

"Witnesses, — J. M. STIMPSON,
              S. E. STIMPSON.

"Whereas, upon the petition of James Stimpson for an extension of the within patent, granted to the said Stimpson on the 25th day of August, 1831, the Board of Commissioners, under the eighteenth section of act of Congress approved the 4th day of July, 1836, entitled 'An Act to promote the progress of the useful arts, and to repeal all acts and

parts of acts heretofore made for that purpose,' did, on the 21st day of August, 1845, certify that said patent ought to be extended : Now, therefore, I, Edmund Burke, Commissioner of Patents, by virtue of the power vested in me by said eighteenth section, do renew and extend said patent, and certify that the same is hereby extended for the term of seven years from and after the expiration of the first term, viz. the 23d day of August, 1845; which certificate of the said Board of Commissioners, together with this certificate of the Commissioner of Patents, having been duly entered of record in the Patent-Office, the said patent now has the same effect in law as though the same had been originally granted for the term of twenty-one years.

    " In testimony whereof, I have caused the seal of the Patent-Office to be hereunto affixed, this 21st day of August, [SEAL.]    1845.

           " EDMUND BURKE, *Commissioner of Patents.*"

     It is admitted, that, for the invention of the plaintiff referred to in the above-mentioned specification as being for " turning short corners," a patent, dated 23d August, 1831, duly issued to him, which, for defect in specification, was surrendered ; and that another, in place of it, issued to him, dated the 26th of September, 1835, and that said patent was duly extended for the term of seven years from the 23d of August, 1845, when the term of said original patent ended.

     It is admitted that the invention for " turning short corners," as described in the specification in the patent of the 26th of September, 1835, was as follows, to wit : —

### *Specification.*

" The schedule referred to in these letters patent, and making part of the same, containing a description, in the words of the said James Stimpson himself, of his improvement in the mode of turning short curves on railroads, for which letters patent were granted, dated the 23d day of August, 1831, which letters patent are hereby cancelled on account of a defective specification.

" To all to whom these presents shall come :

" Be it known that I, James Stimpson, of the city and county of Baltimore and State of Maryland, have invented a new and useful improvement in the mode of turning short curves upon railroads with railroad carriages, particularly those round the corners of streets, wharves, &c., and that the following is a full and exact description of said invention or improvement a. invented or improved by me, viz. : —

" I use or apply the common peripheries of the flanches of the wheels for the aforesaid purpose in the following manner.

" I lay a flat rail, which, however, may be grooved, if preferred, at the commencement of the curvature, and in a position to be centrally under the flanches of the wheels upon the outer track of the circle, so that no other part of the wheels which run upon the outer circle of the track rails shall touch or bear upon the rails but the peripheries of the flanches, they bearing the whole weight of the load and carriage, while the opposite wheels which run upon the inner track of the circle, are to be run and bear upon their treads in the usual way, and their flanches run freely in a groove or channel, which treads are ordinarily about three inches in diameter less than the peripheries of the flanches. Were the bearing surfaces of the wheels which are in contact with the rails while thus turning the curve to be connected by straight lines from every point, there would thus be formed the frustums of two cones (if there be four wheels and two axles to the carriage), or if but one axle and two wheels, then but one cone; which frustums, or the wheels representing their extremities, will, if the wheels are thirty inches in diameter, and are coupled about three feet six inches apart, turn a curve of about sixty feet radius of the inner track rail. The difference in diameter between the flanches and treads being as before stated, and the tracks of the usual width, the wheels coupled as stated would turn a curve of a somewhat smaller radius if the axles were not confined to the carriage, and in a parallel position with each other; but this being generally deemed necessary, the wheels run upon lines of tangents, and those upon the inner track, being as wide apart in the coupling as the outer ones, keep constantly inclining the carriage outwards, and thus cause the carriage to tend to run upon a larger circle than the difference in diameter of the treads and flanches would otherwise give; but the depth of the flanches and the couplings may be so varied as to turn any other radius of a circle desired. What I claim as my invention or improvement is the application of the flanches of the wheels on one side of railroad carriages, and of the treads of the wheels on the other side, to turn curves upon railways, particularly such as turning the corners of streets, wharves, &c., in cities and elsewhere, operating upon the principle herein set forth.

JAMES STIMPSON.

" Witnesses, — JAMES H. STIMPSON,
　　　　　　　GEO. C. PENNIMAN.

" Whereas, upon the petition of James Stimpson for an extension of the within patent granted to the said Stimpson on the 23d day of August, 1831, the Board of Commissioners under the eighteenth section of act of Congress approved the 4th day of July, 1836, entitled ' An Act to promote the progress of the useful arts, and to repeal all acts and parts of acts heretofore made for that purpose,' did, on the 21st day of August, 1845, certify that said patent ought to be extended :

" Now, therefore, I, Edmund Burke, Commissioner of Patents, by virtue of the power vested in me by said eighteenth section, do renew and extend said patent, and certify that the same is hereby extended for the term of seven years from and after the expiration of the first term, namely, the 23d day of August, 1845 ; which certificate of the said Board of Commissioners, together with this certificate of the Commissioner of Patents, having been duly entered of record in the Patent-Office, the said patent now has the same effect in law as though the same had been originally granted for the term of twenty-one years.

" In testimony whereof, I have caused the seal of the Patent-Office to be hereunto affixed, this 21st day of August, [SEAL.]    1845.
        " EDMUND BURKE, *Commissioner of Patents.*"

It is further admitted, that, before and since the period of said extension of the first above-mentioned patent, the defendant, a corporation created by the General Assembly of Maryland for the business of, and engaged in, the transportation of passengers and goods by railways belonging to it, did, upon its railway, and as part thereof, in the city of Baltimore, and at the corner of two streets, to be turned in the course of said transportation, construct, and has ever since kept up and used, a curve furnished and fitted as follows, to wit : On the inner side of the curve is placed a double iron rail cast in one piece, with the interval between large enough to allow the admission of the flanch of the wheel, the rail on the outer side being the usual one throughout the curve, without difference of any kind, except that it is curved ; and it is admitted that the passage of the cars round the curve is throughout, and always has been, upon the treads of the wheels ; and these rails were intended and used for the purpose of enabling the cars to turn the curves of the streets above mentioned.

Upon this statement of facts, it is submitted to the court to determine whether the defendant, under a just construction of said patent declared upon, has been guilty of any violation thereof. And it is agreed, that if the court shall, in the prem-

Stimpson *v.* Baltimore and Susquehanna Railroad Co.

ises, be of opinion in favor of the plaintiff, judgment shall thereupon be rendered for the plaintiff for the damages laid in the declaration; to be released on payment of such sum as shall be found for actual damages by a jury, to be impanelled by consent for that purpose, subject to be increased by the court, according to the act of Congress in such case made and provided.

The court to render an absolute judgment for the defendant if of opinion in the premises with the defendant; and either party having the right to sue out a writ of error from the judgment of the court.

It is further agreed, that the railway above mentioned used by the defendant is not sunk into the ground, so as to make the top of the rail on a level with the surface, but projects above the surface the height of the rail; and that the court shall have the power to draw all inferences from the facts herein stated which could be drawn by a jury.

CHARLES F. MAYER, *Plaintiff's Attorney.*
J. M. CAMPBELL, *Defendant's Attorney.*

The case was argued by *Mr. Mayer*, lor the plaintiff in error, and by *Mr. Campbell*, for the defendant in error.

*Mr. Mayer.*

By referring to the defendant's brief, it is perceived that the right of this court to take cognizance of this cause is disputed. It is true, that the determination of the suit in the court below was upon a statement of facts, and under an agreement that the court might draw inferences from the facts as a jury might. The statement was for the purpose of bringing to the attention of the court what the invention of the plaintiff was, and in order that they might compare the contrivance of the defendant with it. The very agreement provides a reserved right of review. The mere circumstance, then, that the court were to draw inferences from the facts as a jury might do, does not make the judgment below irreversibly final, and nullify the agreement for assuring to either party the benefit of an appellate review.

But if the court should be of opinion that by the agreement they cannot consider the case, they will not therefore affirm the judgment below by dismissing it, but will send it back as in a case of mistrial.

The case of Prentice *v.* Zane, 8 Howard, 470, was disposed of in a manner not meeting the unanimous approbation of this court; and it will not be followed if even by discrimination any distinction can be taken between this or any other case

and that. But that was the case of a special verdict, in which the jury found, not the facts, but the *testimony*, and the counsel, not willing to hazard the mistakes of another blundering jury, submitted the case upon that testimony and the few facts which were found; and this court thought that it would convert them into a jury to require them to find the facts from testimony presented to them. But if the court below could not within its powers find facts, this court will not presume that it did so; but, on the contrary, that it did not do so. A court does, however, in a metaphysical sense, in every case make inferences from facts; and it directs a jury to infer from facts. But here there is no room for inference. The facts are all agreed.

But is it true, as is assumed by the other side, that the court can in no case deal inferentially with facts? There is such a thing as a demurrer to evidence, which assumes all the facts asserted on the other side to be true, and the court infers from those facts as a jury would do. The facts are all admitted by the demurrer, and the court deals with those facts. An appellate court does the same. The facts must, however, be admitted, for there can be no such thing as a demurrer to evidence where the testimony is contradictory. 3 Pet. 36, 96; 4 Cranch, 219; 7 Cranch, 565; 11 Wheat. 171, 320. Now in the last case the court decided that it was not a proper case for demurrer. The question referred to the court was not one of law, but of fact; that is, the *facts* were not admitted from which the court were to make proper inferences, but they were to deduce from the *testimony* what the facts were. It is not, then, strictly true, that, in the demarcation of the line that separates the court and jury, it is not the province of the court to deal with facts inferentially. And why do you adopt the analogy to a special verdict rather than to a demurrer to evidence, when you come to assign a place to a " case stated " in the technical vocabulary? The court must look to the facts to determine whether the invention in the one case is the invention in the other case; but that is not finding facts. It is mere construction, which the judicial mind is always employed in making.

As to the merits. Has the defendant infringed our patent? Now what is the principle of our invention, not as gathered from a single expression judged by a meagre and carping criticism, but as taken from the whole context? The courts say that you are to look at the thing to be done, the object to be accomplished, and then to the agency by which it is accomplished. 1 Sumner, 482. The operative principle of our patent is the *groove*, by which the cars are kept in place, and it makes no difference whether you run them upon the flanch

or upon the tread. Now the defendant claims to have constructed a railway by the laying of two pieces of rail with an interval between them, which answers to our groove. And reliance is placed upon the using of one rail only for a groove, the other rail being flat. This, however, only gives the defendant a less beneficial use of our invention. It is but a mere colorable variance from the arrangements of the invention, whilst the principle, the characteristic merit, is adopted, whether on one or both sides of the railway, and whether the wheel shall move on the flanch or the tread. The case from 3 Wash. C. C. R. applies with force, where you take part of an invention, or accomplish less than the patentee proposes.

*Mr. Mayer* cited 2 Mason, 115; 4 Eng. Com. Law Rep. 357; 6 ib. 512 (4 B. & A. 550); 4 Wash. C. C. R. 68, 703; 2 Brock. 298.

*Mr. Campbell, contra.*

The first question is whether this court can exercise jurisdiction in this case. Can this court go out of its province as a court of law, and deal with other than questions of law.? The court below had the power to find other facts by inference than those stated, and can this court, in the absence of any statement by the court below as to such further facts, determine what additional facts, if any, were or were not before the Circuit Court? The counsel on the other side says that the court can examine questions of fact, and draw inferences from facts, and that it has been done in case of demurrers to evidence. The case of Prentice *v.* Zane may stand, however, with the previous decisions. In demurrers to evidence, the only question is one of law upon the facts admitted. And Judge Buller long ago decided, that there was no difference in principle between a demurrer to evidence and a special verdict. In either case the facts are found, and the court is called upon to determine the law. But in this case the court is to determine a mere question of fact. It is to deduce, from a comparison of the plaintiff's claim with the defendant's claim, the fact whether the one conflicts with the other. This case, then, presents no analogy to that of a demurrer to evidence where all the facts are admitted.

As to the merits. The reason that ordinary railway tracks are an obstruction to common travelling-carriages is, that it is necessary that the rails should be raised above the surface of the ground, because railroad wheels are constructed differently from ordinary wheels in having two circumferences of different diameters, the smaller circumference being intended to rest on the rail (and called the tread), and the larger circumference

running on the side of the rail. Now the whole difference between the plaintiff's invention and the common railway track is, that the one is sunk beneath the surface of the ground, and the other not; the groove in his case answering the purpose of the elevation of the rails in the ordinary railway. Now he does not claim the groove alone, and it is no part of his invention; but the *combination* of the groove with the sunken rails. The object which he accomplishes is, the advantage of the present form of railroad wheels *without* the usual obstruction to common vehicles.

The plaintiff's invention is a combination of the usual rail with a groove on each side of the road for the flanch of the wheel to travel in, so laid as not to rise above the surface. He has patented grooves on *both* sides of the road in connection with the sunken rail. He has patented grooves in combination, and not a single groove. Now the defendant uses a rail with one groove only, that is, with a groove on one side of the road only, and the rails, instead of being sunk into the ground even with the surface, rise above the surface the height of the rail. The defendant's railway does not purport to do away, and does not in fact do away, the obstruction which it is the object of the plaintiff's invention to remove. The combination is not the same, and the result is different. How, then, can it be said that the one is an infringement of the other?

Now it is settled in the case of Prouty v. Ruggles, 16 Pet. 336, that, where three things are patented in combination, it is no infringement to use two of them in combination to produce the same result.

*Mr. Mayer*, in conclusion.

What we say is, that the using of one groove is a mere evasion, a mere colorable claim to invention. If the only object of our invention was the mere sinking of the railway in order to remove an obstacle from ordinary vehicles, why, we should have patented only the sinking of the railway. But it is not so. We claim the sinking of the road in connection with the grooves for the reception of the flanches, in order to accomplish the safety of the cars, and their being kept in their course, especially at turns and corners. It is too narrow a view which is taken by the other side, to consider the sinking of the rails as the whole of the invention, merely because it describes that as one of its advantages. We maintain that Mr. Stimpson has patented the grooves, because he could not effect the objects of street travel without grooves. It is true, he describes his railway as peculiarly advantageous in the streets of towns

and cities; still he does not confine it to that. The patent provides for the turning of a curve or corner, and this is as much a part of the claim as the sinking of the rail. The arrangement by which this is attained, with entire safety to the car and without impeding the speed, is singularly beautiful.

But it is said that this is a combination, and if any of the parts are left out, the combination is not used. There is no claim here for a combination as such. We know what a groove is, and what a flanch is. Now perhaps the effect, namely, the groove operating to restrain and confine the flanch and thereby secure the safety of the car, may be produced as well by one groove as two. Still, the principle of the thing is the same. But this is not a combination. A combination is the union of distinct mechanical principles, not a mere duplication of the same principle. The case of Prouty *v.* Ruggles was that of a plough. The whole of the parts were patented as a combination; and by so doing the patentee informed the world that any thing short of the union of all these parts is not his invention. The jogging part of the plough was considered by the court a material part of the plaintiff's invention. And the defendant, having arrived at the same result without the jogging, had not taken the plaintiff's combination. But suppose there had been three joggings instead of one, and the defendant had taken two, would not that have been an infringement? The mere *quantum* of effect, whether greater or less, is not the point.

In regard to the jurisdiction, the court in 11 Wheaton says, that, when the facts are found, the court will make inferences from them precisely as a jury would do. But in the case of Prentice *v.* Zane the facts were not found. The testimony was given, and the court was left to find out the facts from the testimony. Now here you have all the facts. You have the plaintiff's claim, the sum, substance, and gist of his invention. You have also the sum and substance of that which we consider an infringement. The one can be placed beside the other, and it is but a matter of simple comparison to determine whether the one is identical with the other in any of its material parts.

Mr. Justice DANIEL delivered the opinion of the court.

This case comes before us upon a writ of error to the Circuit Court of the United States for the District of Maryland.

The plaintiff in error instituted in the Circuit Court his action on the case to recover of the defendant damages for an alleged infringement of a patent granted to the plaintiff on the 23d of August, 1831, and subsequently, under the authority of

the United States, renewed and extended to him for an addi-
tional space of seven years from the expiration of the first
grant.

On the trial of this suit upon the plea of not guilty, the par-
ties by agreement submitted their cause to the court upon a
case stated. The court, on the case thus made and submitted,
gave judgment in favor of the defendant; and to test the cor-
rectness of this judgment is the purpose of the investigation
now before us.

The invention or improvement claimed by the plaintiff in
error, and by him alleged to have been pirated by the defend-
ant, is thus described in the schedule and specification filed
with and made a part of the letters patent:—" A new and use-
ful improvement in the mode of forming and using cast or
wrought iron plates or rails for railroad carriage-wheels to run
upon, more especially for those to be used on the streets of
cities, on wharves, and elsewhere; and I do hereby declare,
that the following is a full and exact description of my said
inventions or improvements.

" For the purpose of carrying railroads through the streets of
towns or cities, or in other situations where circumstances may
render it desirable that the wheels of ordinary carriages should
not be subjected to injury or obstruction, I so construct or form
the rails, that the flanches of the wheels of railroad cars or car-
riages may be received and run within narrow grooves or chan-
nels, formed in or by said rails, said grooves not being suffi-
ciently wide to admit the rims of the wheels of gigs or other
ordinary carriages having wheels of the narrowest kind."

After some remarks descriptive of the shape and dimensions
of the plates or rails, and of the grooves to be used, the specifi-
cation thus proceeds: — " Should it be preferred to use the ordi-
nary flat wrought-iron rails, they may be laid double, at such
distance apart as to form the proper channel for the flanch be-
tween them. Wrought plates may also be formed in the man-
ner represented in figure 7. This plate is rolled so as to have
a channel in it, which may be one inch and a quarter wide
at top, one inch at bottom, and five eighths of an inch deep.
Where it is necessary to cross a water-gutter in the street, I
use a cast iron plate or plates to cross said gutter, the flanch
channels being in such plate or plates. The whole surface be-
tween the channels is cast rough, to prevent the slipping of the
feet of horses. The aforesaid cast-iron plate is best cast in one
piece, as it will be stronger than if divided; although of the
same thickness, it must of course be of a width sufficient for
the particular gutter to which it is to be applied; and it should
be strengthened by ribs cast on the lower side. In some cases

I cover ·the gutters the whole width of the street with such cast-iron plates, and extend them to some distance beyond the curbings. I thus make a great improvement in streets for the ordinary purposes of travel." Such being substantially, and indeed literally, as far as it is set forth, the descriptive part of the plaintiff's specification, his *claim*, or the substance and effect of his alleged invention and improvement, is given in these words :— " What I claim as constituting my invention, and desire to secure by letters patent, is the employment of plates or rails, either of cast or of wrought iron, constructed and operating upon the principle or in the manner herein described ; having narrow grooves on each side of the track for the flanches of car-wheels to run in, by which they are adapted to the unobstructed passing over them of the various kinds of common carriages, and to the running of the wheels on slight curves without dragging. I also claim, in combination with such grooved rails or tracks, the employment of plates of cast-iron for the covering and crossing of gutters, such plates being constructed as described, and having the necessary flanch channels cast in them."

It is manifest from the description of the plaintiff, as given both in his specification and claim, that the improvement he alleges to have been made by him, whether important or otherwise, consists essentially, if not formally, in a combination. His grooves for the admission of the flanches of car-wheels, whether cast in iron plates or produced by the juxtaposition of two flat iron rails, and the rails themselves, were all of them long previously known, and long familiar in use ; and it was by an application or combination of these familiar means or agents that he was to accomplish the result proposed, namely, the unobstructed passage of carriages over railroad tracks when laid in streets or cities. The only idea or design in the plaintiff's description which wears the semblance of originality, is that of sinking or depressing these known agents or materials in combination to a level with the surface over which the passage of ordinary carriages was to take place. Still, these agents or materials were the same well-known grooves, the same car-wheels and flanches, and the same flat rails, which were to constitute the means of the plaintiff's operations. And the object of these operations, the essential improvement claimed, it should be constantly borne in mind, is the preventing of an inequality in the surface of streets, forming an obstruction to ordinary carriages, by reducing the railroad track to the same plane with the surface of the streets themselves.

The acts of the defendant complained of as being an infringement of the plaintiff's patent are thus set out in the case

agreed by the parties, viz.: — " That, before and since the period of said extension of the first above-mentioned patent, the defendant, a corporation created by the General Assembly of Maryland for the business of, and engaged in, the transportation of passengers and goods by railways belonging to it, did, upon its railway, and as part thereof, in the city of Baltimore, and at the corner of two streets to be turned in the course of said transportation, construct, and has ever since kept up and used, a curve furnished and fitted as follows, to wit: On the inner side of the curve is placed a double iron rail cast in one piece, and with the interval between large enough to allow the admission of the flanch of the wheel, the rail on the outer side being the usual one throughout the curve, without difference of any kind, except that it is curved; and it is admitted that the passage of the cars round the curve is throughout, and always has been, upon the treads of the wheels; and these rails were intended and used for the purpose of enabling the cars to turn the curves of the streets above mentioned." The mechanism thus described as used by the defendant is, like that contained in the specification annexed to the patent of the plaintiff, evidently a combination, or an application of means or agencies previously known. If that mechanism can have any claim to originality, it must be in the *modus* or plan of that application, not in the invention of the several parts of the mechanism.

It remains, then, by a comparison of these two combinations, to ascertain whether they are the same, either in form, or in the manner of their operation, or in the results they were designed to accomplish.

The combination claimed by the plaintiff as his improvement consists of the use of grooves on both sides of a railroad track, and either cast in iron plates, or made by the parallel position of double lines of flat rails, in which grooves the flanches only of car-wheels are to run, and which are likewise to be too narrow to admit the wheels of carriages having the most slender rims or felloes; and the whole of this combination or mechanism is to be depressed to a plane exactly corresponding with that of the street in which it may be introduced; as, without this arrangement, it is obvious that the unobstructed passage of ordinary carriages (the great object in view) could never be attained. The machinery of the defendant, complained of as an infringement of the plaintiff's patent, consists of a double flat rail of cast iron placed on the inner side of a curve or corner intended to be passed, and an ordinary flat rail on the exterior line of the same curve to be passed; and the whole of this machinery is constructed on the same plane with

the general track of the road, elevated to whatever point that track may be raised, and without regard to the convenience of ordinary carriages making transverse passages through the streets; such facilities to ordinary carriages being no part of the end proposed by the defendant. From this comparison of the combinations in use by the plaintiff and the defendant respectively, and upon a just construction of the plaintiff's patent, the court, so far from regarding them as identical either in mode, in design, or in result, is in all their characteristics constrained to view them as wholly dissimilar, and as not conflicting with each other. The combination, therefore, used by the defendant, cannot be regarded as an infringement of the plaintiff's patent. This conclusion is in strictest accordance with the ruling of the late Justice Story at circuit in the case of Prouty v. Ruggles, afterwards confirmed by this court, as will be seen in 16 Peters, 341. In the case just cited, the law is thus propounded by the Chief Justice : " The patent is for a combination, and the improvement consists in arranging different portions of the plough, and combining them together in the manner stated in the specification, for the purpose of producing a certain effect. None of the parts referred to are new, and none are claimed as new ; nor is any portion of the combination less than the whole claimed as new, or stated to produce any given result. The end in view is proposed to be accomplished by the union of all, arranged and combined together in the manner described ; and this combination, composed of all the parts mentioned in the specification, and arranged with reference to each other, and to other parts of the plough in the manner therein described, is stated to be the improvement; and is the thing patented. The use of any two of these parts only, or of two combined with a third, which is substantially different in form or in the manner of its arrangement and connection with the others, is therefore not the thing patented. It is not the same combination, if it substantially differs from it in any of its parts." The same doctrine is ruled in the case of Carver v. Hyde, 16 Peters, 513.

A preliminary question was raised in the argument of this cause, which, as it is connected with the practice in this court and in the courts inferior to this, and has an important bearing on the convenience both of the courts and the bar, is deserving of consideration. The question alluded to is this : Whether, as this case is not brought up either upon express or specific exceptions to the rulings of the Circuit Court, nor upon any decision of that court upon a special verdict found by the jury, but comes before us upon an agreed statement between the parties, this court can in this form take cognizance thereof?

And it is insisted for the defendant in error, that, under such circumstances, the writ of error could not be prosecuted. The objection thus urged is not one of the first impression in this court; it has been urged upon, and considered by, them on a former occasion, and must be regarded as having been put to rest.

This objection to the jurisdiction of the appellate court upon a case agreed between the parties in the court below, had its origin, no doubt, in the practice in the English courts, by which we are told that the appellate tribunal will not take cognizance of such a case, as it will upon one standing on exceptions, or on a special verdict.

This refusal, however, so to take cognizance, will, upon examination, be found to grow out of the peculiar modes of proceeding in the English courts, as is shown by Mr. Justice Blackstone in the third volume of his Commentaries, p. 377, in his chapter on the trial by jury, in which we find the following account of the proceedings in those courts. " Another method," says this writer, " of finding a species of special verdict is, when the jury find a verdict generally for the plaintiff, but subject, nevertheless, to the opinion of the court above, on a special case stated by the counsel on both sides, with regard to the matter of law, which has this advantage over a special verdict, that it is attended with much less expense, and obtains a speedier decision; the *postea* being stayed in the hands of the officer of *nisi prius* till the question is determined, and the verdict is then entered for the plaintiff or the defendant, as the case may happen. But as nothing appears on the record but the general verdict, the parties are precluded hereby from the benefit of a writ of error, if dissatisfied with the judgment of the court or judge upon the point of law, which makes it a thing to be wished, that a method could be devised of either lessening the expense of special verdicts, or else of entering the cause at length upon the *postea*." So, too, Mr. Stephen, in his Treatise on Pleading, p. 92, speaking of the practice in England of taking verdicts subject to a special case, remarks, " that a special case is not like a special verdict entered on record, and consequently a writ of error cannot be brought on this decision." The objection now urged, and the authorities bearing upon it, were pressed on the attention of this court, and considered by them, in the case of the United States against Eliason, reported in 16 Peters, 291. In that case this court said: " It is manifest that the reason why, according to the practice in the English courts, a writ of error will not be allowed after a case agreed, is this, and this only, that in those courts the agreed case never appears upon, or is made a part of, the record,

Stimpson *v.* Baltimore and Susquehanna Railroad Co.

and therefore there is no ground of error set forth, upon which an appellate and revising tribunal can act. In the language of Justice Blackstone, nothing appears upon the record but the general verdict, whereby the parties are precluded from the benefit of a writ of error." This court goes on further to remark, that, " by a note to p. 92 of Mr. Stephen's Treatise, it is said to have been enacted by the 3d and 4th of William the Fourth, ch. 42, that, where the parties on issue joined can agree on a statement of facts, they may, by order of a judge, draw up such statement in the form of a special case for the judgment of the court, without proceeding to trial. By the settled practice anterior to this statutory provision, it was in the power of the parties to agree upon a statement of the case; it would seem reasonable and probable, therefore, that the power given to the judge (as an exercise of his judicial functions), to regulate the statement, was designed to impart a greater solemnity and permanency to the preparation of the proceeding, and to place it in an attitude for the action of some revising power. But should a want of familiarity with the details of English practice induce the hazard of misapprehension of its rules, or of the reasons in which they have their origin, the decisions of our own courts, and the long-established practice of our own country, are regarded as having put the point under consideration entirely at rest." The court then, after adverting to several decisions deemed applicable to the point, came to the following conclusion: " This court, therefore, has no hesitancy in declaring that the point of practice raised by the defendant's counsel presents no objection to the regularity in the mode of bringing this case before it." Regarding the above conclusion as promotive both of justice and convenience, we give it our entire concurrence; and upon the character, therefore, of the particular cause before us, as disclosed in the case agreed by the parties, we decide that the judgment of the Circuit Court be, and the same is hereby, affirmed.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.