## CLAYTON *v.* SMITH.

PRACTICE — *error may be assigned on agreed case.* In a case heard on an agreed statement of facts, it is not necessary to move for a new trial in the court below :

Or to preserve the statement of facts in the record by bill of exceptions :

Or to except to the judgment of the court below :

CONSTRUCTION *of revenue law of* 1864. As to contracts made after the law of June 30, 1864 (13 Stat. at Large) was passed, the law will presume that the two and one-half per centum, mentioned in section 103 of that act, is included in the rate specified in the contract, and a carrier of goods for hire cannot recover the tax in addition to the contract price.

*Error to District Court, Arapahoe County.*

Mr. J. BRIGHT SMITH and Mr. GEORGE F. CROCKER, for plaintiff in error.

Messrs. CHARLES & ELBERT, for defendant in error.

HALLETT, C. J. This was an agreed case, in which the defendant in error, who was also defendant in the court below, obtained judgment for costs. The record shows the stipulation or agreement of the parties and the judgment of the court, no bill of exceptions being taken by either party. We shall first notice some questions of practice presented by defendant in error. It is contended that error cannot be assigned upon the record, because,

1st. There was no motion for a new trial made in the court below.

2d. The parties' statement of facts is not preserved in the record by bill of exceptions.

3d. There was no exception to the judgment of the court below.

As to the first point, if the act of the district court is to be regarded as the trial of a cause by the court without a jury, we have heretofore decided that error may be assigned upon the judgment of the court in such cases, without a motion for new trial being made. But, in this case, no issue of fact was tried, such trial being rendered unnecessary

by the agreement of the parties.   The facts were not in dispute, but the parties were unable to agree as to the law arising upon the facts, and, therefore, they called upon the district court to assist them.   In respect to the functions of the court, called into exercise by these parties, it was like the case of a demurrer to pleading, in which the demurrant admits the facts alleged against him, and demands the judgment of the court upon them, or, like a special verdict, in which the facts are stated, and the finding is for the plaintiff or defendant, according to the law arising upon those facts.   We move for a new trial only when issues of fact have been determined, and, as there was no such issue in this case, such motion would have been irregular.   As to the second and third points, the practice adopted in this case has been sanctioned by the supreme court of the United States, and we shall not look for other authority.

In the case of *Stimpson* v. *Baltimore & Susquehanna R. R. Co.*, 10 How. 345, the question was, " whether, as this case is not brought up either upon express or specific exceptions to the rulings of the circuit court, nor upon any decision of that court, upon a special verdict found by the jury, but comes before us upon an agreed statement between the parties, this court can, in this form, take cognizance thereof?"

And this was resolved in the affirmative.   In *Suydam* v. *Williamson*, 20 How. 429, the practice respecting bills of exception, special verdicts and agreed cases, is elaborately discussed, and the practice pursued in the case at bar is fully approved.   There are a great many cases in the reports of the supreme court in which this practice is recognized and approved, of which *Munford* v. *Wardell*, 6 Wal. 425, is the latest ; and we regard the practice as settled in all the courts established by the federal government.   The practice in this court should conform to the practice in the supreme court of the United States, as far as practicable, inasmuch as our proceedings may be reviewed in that court. The objections raised by defendant in error cannot be sus-

tained, and, therefore, we proceed to examine the judgment of the court below.

By section 103 of an act to provide means for the support of the government, and for other purposes, approved June 30, 1864, congress levied a tax of two and one-half per centum upon the gross receipts of persons and corporations engaged in transporting passengers and property for hire, and added to the section the following : "Provided, that all such persons, companies and corporations shall have the right to add the duty or tax imposed hereby to their rates of fare, whenever their liability thereto may commence, any limitations which may exist by law or by agreement with any person or company, which may have paid, or be liable to pay, such fare, to the contrary notwithstanding."

In December, 1864, defendant in error delivered to plaintiff in error certain freight, at nine cents per pound; afterward he was taxed on receipt of the freight money the sum of $482.67 which tax he paid to the government.

The question is, whether, under the act above mentioned, defendant in error may add the amount of the tax paid by him to the contract price of nine cents per pound.

The doubt arises upon the proper construction of the clause given above; and we think it may be removed by careful consideration of the language of the law. In the first place it is to be observed, that the parties taxed have the right to add the duty or tax to their *rates of fare ;* by which we understand that the carriers were authorized to increase their ordinary and customary charges· for carrying by so much as would be necessary to meet this tax upon the gross amount received. This is not authority to collect two and one-half per centum upon the amount received in an isolated case, but rather an authority to advance the *rates of fare,* so that the aggregate amount received for all services performed by the parties as carriers shall be two and one-half per centum larger than before the passage of the act. It is to be observed, also, that this right of the carrier to re-imburse the tax paid from the pocket of his employer is to be exercised by adding to *his rates of fare.* He can-

VOL. I. — 13

not collect the two and one-half per centum from his employer as a tax, but he may increase his rates of fare, so that the fare shall include the two and one-half per centum. Upon reading further we find that the carriers may add the tax to their rates of fare, "Whenever their liability thereto may commence, any limitations which may exist by law or by agreement," etc.

The tax is upon the gross receipts of the parties, from which it seems that they are not liable to the tax until the money actually comes into their hands. If, however, we say that the act authorizes carriers to add the tax to their rates of fare *when their liability commences*, and that liability does not arise until the fare has been paid, we shall involve ourselves in an irrational attempt to increase the fare after it has been extinguished by payment. In the nature of things the right to increase the fare by the amount of the tax must precede the payment of the fare. We conclude, therefore, that the words "whenever their liability thereto may commence" refer not to the receipt of the money by the carrier, but to some other time. At the time the act was passed, the price to be charged by many carriers for transporting passengers and property was regulated by law, while many others had entered into contracts which were yet unfulfilled. It was to these cases that the clause under consideration was intended to apply. The explanatory language with which the clause concludes is not susceptible of a different construction.

In construing contracts, we consider the law operative at the time of making the contract, upon the presumption that the parties themselves looked to that law as their rule of conduct. When, as in this case, the contract was made after the passage of the law, the presumption is that the parties had knowledge of the law, and availed themselves of its provisions. Now, the first part of the clause we are considering authorizes the carrier to add the tax to his rates of fare, and this must be done, if done at all, before the fare is fixed by the contract. As to contracts made before the enactment, this would not be true, because the carrier,

not having been apprised of the tax at the time of making the contract, had no opportunity to protect himself by increasing his rates.

But, in contracts made subsequently to the enactment, the presumption is, that the carrier has advanced his rates so as to meet the tax. Indeed, he needed not the authority of an act of congress to enable him to increase his rates, except the rates were prescribed by law or limited by contract at the date of the act. After the carrier was informed of the tax, if his rates of fare were to be regulated by himself, he could, without the aid of this law, provide against the duty imposed upon him, and, if human experience is to be trusted, he needed no suggestion upon that point.

Therefore, as to voluntary agreements, it will be seen that the clause we are considering is significant only when applied to agreements existing at the date of the act.

In this case the contract was made in December, 1864, several months after the act of congress took effect. The law presumes that the defendant in error established his price for carrying the goods of the plaintiff in error with a view to the payment of the tax levied by congress, and therefore he cannot be permitted to collect the amount of the tax in addition to his charge of nine cents per pound. If he did not fix his rates high enough to cover the tax, he had the power to do so, and cannot complain of the omission.

The judgment of the district court is reversed, with costs, and judgment will be entered in this court in favor of the plaintiff in error and against the defendant in error for the sum of $482.67.

*Reversed.*