passed at its date to the trustees for the benefit of the nephews and nieces; and, so far as this act of 1887 is concerned, it passed to the nephews and nieces at the same time.   It is clear to me that the legislature intended only to impose this tax upon the passing of property; that is, the devolution of title thereto by will, by the intestate laws of this state, by deed, grant, sale, or gift, after the passage of this act.   If the contrary was the intent, the act should have so declared.   The liability of the estate to this tax is to be ascertained by the law as it exists at the date of the death of the decedent.   Section 4 of the act provides that at that time the taxes "imposed by the act shall be due and payable."   At the date of this decedent's death, March, 1888, she owned none of the property in question.   Her title thereto had been conveyed by her to others long before, in whom it absolutely vested at the date of the conveyance.

Let an order be handed up overruling the report of the appraiser, and providing that the property appraised by him is not subject to the tax.

---

## In re DARRAGH'S ESTATE.

(*Surrogate's Court, New York County.*   November 28, 1888.)

APPEAL—REQUISITES—BOND—POWER OF SURROGATE.

Code Civil Proc. N. Y. § 1303, made applicable to appeals from a surrogate by section 2575, provides that where an appellant seasonably and in good faith serves notice of appeal, but omits, through mistake or excusable neglect, to do any other act necessary to perfect the appeal, the court in or to which the appeal is taken may permit the omission to be supplied.   *Held*, that the surrogate may permit appellant to file and serve any undertaking on appeal, where he has acted in good faith, and his omission was through excusable neglect.

The will of Catharine Darragh, deceased, was on the petition of Rose Duffin, a legatee, admitted to probate on May 14, 1888; the executor, M. J. Doherty, and William and James Ryan, minors, by their guardian *ad litem,* Theophilus B. Steele, appearing in support of the will, and Henry C. Darragh appearing in opposition thereto.   The contestant served notice of appeal June 8, 1888, and now applies for leave to file and serve an undertaking on appeal.

*A. Oldrin Salter,* for contestant.   *Thomas P. Fitzsimmons,* for executor. *John Delahunty,* for legatee Duffin.   *Theophilus B. Steele,* guardian *ad litem,* for infants.

RANSOM, S.   This is an application by the contestant appellant for leave to file and serve an undertaking on appeal herein.   The notice of appeal was duly served.   The application is opposed by the special guardian, on the ground that it should be made to the general term.   Section 1303, Code Civil Proc., provides that "where an appellant seasonably and in good faith serves the notice of appeal, either upon the clerk or upon the adverse party, or his attorney, but omits, through mistake, inadvertence, or excusable neglect, to serve it upon the other, or to do any other act necessary to perfect the appeal, or to stay the execution of the judgment or order appealed from, the court in or to which the appeal is taken, upon proof by affidavit of the facts, may, in its discretion, permit the omission to be supplied, or an amendment to be made, upon such terms as justice requires."   This section is made applicable to an appeal taken from a decree of this court by section 2575.   This court has full jurisdiction to entertain this application.   In the following cases an appeal was taken to the general term, and an application, under section 1303, (or 327, Old Code,) made at special term, and entertained:   *Mills* v. *Thursby,* 11 How. Pr. 129; *Insurance Co.* v. *Insurance Co.,* 10 How. Pr. 344.   And it was expressly held in *Arnoux* v. *Homans,* 32 How. Pr. 382, that the court below could entertain such application.   The case of *Parks* v. *Murray,* 109 N. Y. 646, 16 N. E. Rep. 485, cited by the special guardian, is not in point.   There the appeal to the court of appeals was perfected by filing and serving the no-

tice of appeal and the requisite undertaking, and, after the appeal was perfected, (section 1326,) the supreme court made an order directing plaintiff to file a new undertaking. Held, the motion should have been made in the court of appeals, and not in the supreme court. In the case under consideration the appeal has not been perfected. Having no doubt of the power of this court to grant the application, there simply remains the question whether it ought to be granted on the facts as stated by petitioner, which are not controverted. The appellant, I think, has acted in good faith, and his omission to file and serve the undertaking is excusable neglect. Motion granted.

---

### In re STEWART'S WILL.

(*Surrogate's Court, New York County.* November 23, 1888.)

WILLS—PROBATE—PROOF OF DEATH.

Testator went in his yacht on a voyage of about 20 days, but never reached his destination, and neither the yacht nor any one on board was heard from afterwards, unless a similar vessel, sighted by a steam-ship 29 days after his departure, was his. On the day succeeding his departure, a great storm occurred, covering the probable situation of the yacht at that time, by which other vessels were lost, and some days after wreckage resembling a part of his vessel was found. Diligent, but ineffectual, inquiries were made up to the time of filing the petition for probate, six months after his departure. *Held* sufficient evidence of his death to warrant probate of his will.[1]

Petition for the probate of the will of William A. W. Stewart, filed by the executors named therein.

*Stewart & Sheldon,* for proponents. *R. E. Deyo,* special guardian.

RANSOM, S. This is an application for the probate of a paper propounded as the last will and testament of William A. W. Stewart, and that letters testamentary issue to the executors therein named. Testimony has been duly taken by me, which establishes the following facts: *First.* That Mr. Stewart sailed from New York on the 10th day of March, 1888, at 3 P. M., in his yacht Cythera. *Second.* His destination was Kingston, Jamaica. *Third.* The length of time usually consumed in making the voyage from New York to Kingston is 18 to 20 days. *Fourth.* Inquiries have been made by his family at the offices of the West Indies steamers, and of the officers of those steamers, for any news of the yacht, all of which have been futile, with one exception. Capt. Hubbard, commander of the steam-ship Barracanta, sailing regularly between New York and certain ports of the West Indies, reported that on the 9th of April, this year, about 300 miles north of the island of St. Kitts, he sighted, at 2 o'clock P. M., at a distance of eight or nine miles, a small vessel, which he took to be yawl rigged, (the Cythera was yawl rigged,) bound south, apparently headed for the Windward passage. No intelligence of this vessel has ever been received from the point in which she was seen by Capt. Hubbard. She should have made a harbor within a week. Cablegrams have been sent to the testator, and to the custom-house authorities at Kingston and the Azores, for news of the yacht. Those to the testator have never been answered, and those to the custom-house authorities have been answered in the negative. Letters to the testator have been written, and duly posted, to Hamilton, Bermuda, and Kingston, Jamaica, and have all been returned by the post-office officials, marked "Unclaimed." The day following the departure of the Cythera she was reported in the official maritime reports as having been spoken Sunday morning, about 9 o'clock, 25 miles east of Barnegat, bound south. Capt. Leonhard, of the bark *Josie E. Moore*, reported that about March 25th he saw, 150 miles south by east of Highland lights, some

---

[1] As to the presumption of death arising from absence and silence, see Cox v. Ellsworth, (Neb.) 26 N. W. Rep. 460, and note; Stockbridge v. Stockbridge, (Mass.) 14 N. E. Rep. 928.